FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OKANOGAN HIGHLANDS ALLIANCE, and STATE OF WASHINGTON,<br><br>                              Plaintiff,<br><br>     v.<br><br>CROWN RESOURCES CORPORATION and KINROSS GOLD, USA, INC.,<br><br>                              Defendants. | NO:  2:20-CV-147-RMP<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

   BEFORE THE COURT is Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF No. 18.  A hearing took place on September 24, 2020, via video conference.  Paul A. Kampmeier appeared on behalf of Plaintiff Okanogan Highlands Alliance; Kelly T. Wood appeared on behalf of Plaintiff State of Washington; and Jonathan W. Rauchway appeared on behalf of all Defendants.  The

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

1  Court has reviewed the pleadings, heard oral argument from the parties, and is fully
2  informed.

3                                    **BACKGROUND**

4      Defendants, Kinross Gold USA, Inc., and its subsidiary, Crown Resource
5  Corporation, own and operate Buckhorn Mountain Mine (the "Mine") in Okanogan
6  County, Washington. ECF No. 1 at 13. In 2014, Crown Resources obtained a
7  National Pollutant Discharge Elimination System ("NPDES") permit issued by the
8  Washington State Department of Ecology ("Ecology"). ECF No. 1 at 14. The
9  NPDES permit authorizes its holder to discharge pollutants to waters of the state
10 provided that the permit holder complies with various terms and conditions. *See* 33
11 U.S.C. § 1342.

12     Defendants' NPDES permit has purportedly been modified twice since being
13 issued. ECF No. 1 at 14. The Second Modified NPDES permit is allegedly still in
14 effect after it was administratively extended beyond the February 28, 2019
15 expiration date. *Id.* The Second Modified NPDES permit allegedly requires Crown
16 to capture and treat all water at the [Buckhorn], meet certain numeric effluent
17 limitations at water quality monitoring points, maintain a "capture zone" beyond
18 which mine-generated pollutants are not permitted to travel, and to adhere to "related
19 monitoring, reporting, and adaptive management requirements." *Id.* at 15; *see* 33
20 U.S.C. §§ 1342; 1365(f).

21

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 2

Plaintiffs, Okanogan Highlands Alliance ("Okanogan Highlands") and the State of Washington ("State"), by and through the Attorney General, allege Defendants have violated several terms of the permit and polluted local waters continuously since 2014. *See* ECF No. 1 at 2; State Complaint at 9–10. Although active mining ceased in 2017, Plaintiffs allege that Defendants continue reclamation efforts and are still discharging pollutants to ground and surface waters surrounding the Mine. ECF No. 1 at 3, 5–6; State Complaint at 9–10. Plaintiffs claim that Defendants have violated the terms of their NPDES permit in the following ways: by discharging pollutants in excess of average monthly effluent limitations; failing to maintain capture zones for mine-impacted water; failing to follow permit requirements after exceeding discharge limits; failing to abide by reporting requirements; failing to notify Ecology of its intent to dismantle the prior Mine Water Treatment Plant; and failing to submit and implement a plan before dismantling the prior Mine Water Treatment Plant. ECF No. 1 at 16–28; State Complaint at 12–18.[1]

Pursuant to the notice requirements set forth in 33 U.S.C. § 1365(b)(1)(A), Okanogan Highlands notified Defendants of its intent to sue under the Clean Water Act on January 31, 2020. ECF No. 1 at 32. Okanogan Highlands filed suit on April

---

[1] The State Complaint in this matter is filed in 2:20-cv-00170-RMP. Hereinafter referred to as "State Complaint."

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 3

1  10, 2020.  ECF No. 1.  The State notified Defendants of its intent to sue under the

2  Act on March 5, 2020.  State Complaint at 1-1.  The State filed suit on May 7, 2020.

3  *Id.*  The parties stipulated to consolidate the suits on June 25, 2020.  ECF No. 11.

## LEGAL STANDARD

5    Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss and facially

6  or factually challenge the existence of subject matter jurisdiction.  *White v. Lee*, 227

7  F.3d 1214, 1242 (9th Cir. 2000).

8    Dismissal of a complaint is proper under Fed. R. Civ. P. 12(b)(6) where the

9  plaintiff fails to state a claim upon which relief can be granted.  A motion to dismiss

10 brought pursuant to this rule "tests the legal sufficiency of a claim."  *Navarro v.*

11 *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing the sufficiency of a

12 complaint, a court accepts all well-pleaded allegations of material fact as true and

13 construes those allegations in the light most favorable to the non-moving party.

14 *Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (citation

15 omitted).  To withstand dismissal, a complaint must contain "enough facts to state a

16 claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

17 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

18 content that allows the court to draw the reasonable inference that the defendant is

19 liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20 / / /

21 / / /

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 4

# DISCUSSION

The Clean Water Act, 33 U.S.C. §§ 1251–1376, aims to restore and maintain the "chemical, physical and biological integrity of [the] Nation's waters." 33 U.S.C. § 1251(a). To achieve these goals, the Act "establishes a comprehensive statutory system for controlling water pollution." *Ass'n to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1009 (9th Cir. 2002) (citation omitted). This system includes the use of NPDES permits "for regulating discharges of pollutants into waters of the United States." *Id.* In Washington State, Ecology is authorized to administer the Clean Water Act's NPDES program. *Id.* at 1009–10.

The Clean Water Act explicitly allows private citizens to bring civil suits pursuant to 33 U.S.C. § 1365(a)(1) to enforce "effluent standards or limitations." "Effluent standards or limitations" includes the unlawful discharge of pollutants, pursuant to 33 U.S.C. §1311(a), as well as any condition of a permit issued under § 1342 that is in effect. *See* 33 U.S.C. § 1365(f)(1).

For a successful claim under the Act, a citizen plaintiff must prove ongoing violations, which can be done "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Foundation v. Gwaltney*, 844 F.2d 170, 171–72 (4th Cir.1988), *on remand from* 484 U.S. 49 (1987). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 5

likelihood of repetition." *Sierra Club,* 853 F.2d at 671 (quoting *Chesapeake Bay Found. v. Gwaltney,* 844 F.2d 170, 171–72 (4th Cir. 1988)).

If the defendant wishes to argue that the allegations are untrue, the defendant must move for summary judgment. *See Gwaltney,* 484 U.S. at 66. Here, Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and not for summary judgment. *See Sierra Club,* 853 F.2d at 669. Thus, the Court analyzes Defendants' facial challenges to Plaintiffs' Complaints accordingly.

## I. Defendants' Facial Attack on Jurisdiction Fails

Defendants attack the Court's jurisdiction, arguing that Plaintiffs only allege "wholly past" violations of the federal Clean Water Act rather than ongoing violations. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64 (1987) (concluding that provision of Clean Water Act does not confer federal jurisdiction over citizen suits for violations that are "wholly past").

"To invoke federal jurisdiction under section 505(a) of the Clean Water Act, a citizen plaintiff must allege 'a state of either continuous or intermittent violation— that is, a reasonable likelihood that a past polluter will continue to pollute in the future.'" *Sierra Club v. Union Oil Co. of California,* 853 F.2d 667, 671 (9th Cir. 1988) (quoting *Gwaltney v. Chesapeake Bay Found.,* 484 U.S. 49, 57 (1987)). "The citizen plaintiff need not prove the allegations of ongoing noncompliance before jurisdiction attaches." *Sierra Club,* 853 F.2d at 669. Rather, the pleading standard is minimal: "the citizen plaintiff's allegations must be based on good-faith beliefs,

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 6

'formed after reasonably inquiry,' that are 'well-grounded in fact.'" *Id.* (quoting Fed. R. Civ. P. 11).

Plaintiffs allege not only past violations by Defendants, but continuing violations as well. Okanogan Highlands alleges that its interests "have been, are being, and will be adversely affected by Defendants' Clean Water Act and NPDES permit violations." ECF No. 1 at 6; *see also Sierra Club,* 853 F.3d at 670–71 (finding district court properly assumed jurisdiction over Clean Water Act citizen-suit and quoting plaintiff's complaint with nearly identical language in support). These alleged violations include Defendants' failure to maintain the "capture zone," which has purportedly occurred every day for the last five years. ECF No. 1 at 37; State Complaint at 14. Plaintiffs further allege an ongoing pattern of frequent noncompliance with the permit's reporting requirements. *See* ECF No. 1 at 21–23; State Complaint at 16–17. In support of these allegations, Plaintiffs contend that Defendants continue to own and operate the Mine; Defendants still hold an NPDES permit and are subject to its requirements; and Defendants continue to discharge pollutants to surrounding waters around the Mine. ECF No. 1 at 7, 13–14, 149; State Complaint at 7, 9, 11.

Therefore, Plaintiffs' allegations of continuing violations committed by Defendants appear to be based on good-faith beliefs, "formed after reasonably inquiry," that are "well-grounded in fact," thereby meeting the low threshold set

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 7

forth in Fed. R. Civ. P. 11.  The court may properly assume jurisdiction over Plaintiffs' claims under the Act.  Accordingly, Defendants' facial attack fails.

## II. Defendants' Factual Attack on Jurisdiction also Fails

In resolving a factual attack on jurisdiction, courts may consider evidence beyond the complaint; however, jurisdictional findings are inappropriate where the jurisdictional issue is intertwined with the merits of a claim.  *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  The question of jurisdiction and the merits are intertwined "where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief."  *Id.* (quoting *Sun Valley Gas., Inc. v. Ernst Enters.,* 711 F.2d 138, 140 (9th Cir. 1983)); *see, e.g.*, *Waste Action Project v. Fruhling Sand & Topsoil Inc.*, 737 Fed. Appx. 344, 345 (9th Cir. 2018) (reversing dismissal on jurisdictional grounds because "the Clean Water Act . . . provides both federal subject matter jurisdiction and a claim for relief where a person is 'alleged to be in violation' of its [NPDES] permit").

Where the jurisdictional and substantive issues are so intertwined, dismissal on jurisdictional grounds is only warranted "where the alleged claim under . . . federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."  *Safe Air for Everyone,* 373 F.3d at 1039 (quoting *Bell v. Hood,* 327 U.S. 678, 682–83 (1946)).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 8

1     Here, as decided in *Waste Action Project,* the Clean Water Act provides both federal subject matter jurisdiction and a claim for relief where a defendant is alleged to be in violation of its NPDES permit. *See Waste Action Project,* 737 Fed. Appx. at 345. Because jurisdiction and the merits are intertwined, resolving a factual attack on jurisdiction is inappropriate here. *See Safe Air for Everyone,* 373 F.3d at 1039. Moreover, Plaintiffs' claims under the federal Clean Water Act are not immaterial, insubstantial, or frivolous on their face such that they defeat subject matter jurisdiction. *See Bell,* 327 U.S. at 682–83.

Federal courts can also lose jurisdiction over citizen suits when the defendant can show that the case is moot. *See id.* at 66. To prove a case is moot, the defendant must show that "there is no reasonable expectation that the wrong will be repeated." *Id.* The defendant must demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Phosphate Export Ass'n., Inc.,* 393 U.S. 199, 203 (1968).

Here, Defendants challenge the ongoing nature of a certain subset of violations, namely trigger level exceedances and the dismantling of a water treatment plant at the Mine. However, Defendants have yet to show that those wrongs, as well as the other violations alleged by Plaintiffs, have been completely eradicated at the Mine so as to render the case moot at this juncture.

Therefore, Defendants' factual attack on jurisdiction also fails.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 9

### III. Plaintiffs Sufficiently State a Claim under the Clean Water Act

Defendants argue Plaintiffs' federal claims should be dismissed for failure to state a claim because the alleged violations are "wholly past" and "wholly past" violations are insufficient to state a cognizable claim under the Clean Water Act. ECF No. 18 at 9–12. For a cognizable claim under the Act, 33 U.S.C. § 1365(a)(1), plaintiffs must prove continuous or intermittent violation[s] of an "effluent standard or limitation." As noted above, an "effluent standard or limitation" encompasses restrictions on discharging pollutants, as well as any condition of a permit issued under § 1342 that is in effect. *See* 33 U.S.C. § 1365(f).

Okanogan Highlands alleges various violations of "effluent standards or limitations." *See* ECF No. 1 at 16–28; *see also* ECF No. 1 at 43–150 ("Appendix A") (purportedly identifying Defendants' violations of the NPDES Permit's average monthly numeric effluent limitations during the monitoring periods from January 2015 to December 2019). In support of its claim under the Clean Water Act, Okanogan Highlands plead the following factual allegations: Defendants own and operate the Buckhorn Mountain Mine; surface facilities remain on-site and operational; Defendants hold an NPDES permit still in effect; Defendants continue to discharge pollutants and stormwater to ground waters connected to the United States; and the permit requires Defendants to "capture and treat mine generated contaminated groundwater and industrial stormwater," which Defendants have failed to do, thereby causing water outside the "capture zone" to exceed effluent limits

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 10

1  established by the permit.  *See* ECF No. 1 at 13–18.  Taking these factual allegations

2  in the complaint as true for the purpose of this motion, Okanogan Highlands has

3  sufficiently stated a claim under the Clean Water Act.

4        The State's Complaint alleges that "Defendants have consistently disregarded

5  the obligations of its NPDES permit . . . adversely affect[ing] Washington and its

6  residents by contaminating numerous waters" and that these violations are ongoing.

7  State Complaint at 2, 14; *see also* State Complaint 1-1 (Notice of Intent to Sue).  In

8  support of its claim under the Clean Water Act, the State's Complaint sets forth the

9  following factual allegations: from construction to present day, Defendants

10  discharge pollutants around the site; Defendants are required to meet average

11  monthly numeric effluent limitations and exceed these limits; and the monitoring

12  results from surrounding waters show that contaminants from the Mine have

13  consistently escaped the required "capture zone."  *See* State Complaint at 9, 13–14.

14  Taking these factual allegations in the complaint as true for the purposes of this

15  motion, the State has sufficiently stated a claim under the Clean Water Act.

16        The NPDES permit also includes reporting requirements which Plaintiffs

17  allege are repeatedly ignored by Defendants.  *See* ECF No. 1 at 21–23; State

18  Complaint at 16–17.  Although allegations of reporting violations that are "wholly

19  past" alone are not sufficient to support a claim under the Act, "it is an entirely

20  different situation where past reporting violations [are] alleged in support of the

21  contention that a defendant was engaged in a pattern of non-compliance with

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 11

applicable reporting requirements." *Atwell v. KW Plastics Recycling Div.,* 173 F.Supp.2d 1213, 1228, n. 15 (M.D. Ala. 2001) (distinguishable because plaintiff did not allege that defendant "engaged in a pattern or practice of failing to report its monitoring results").

Plaintiffs claim that Defendants' repeated failures to report and take corrective action are part of a systematic pattern of noncompliance. In support of this alleged pattern, Plaintiffs contend that Defendants have repeatedly failed to report trigger exceedances, failures of the groundwater "capture zone," and did not submit and implement a plan before dismantling the prior treatment plant. ECF No. 1 at 21–23; State Complaint at 16–18. In addition, Okanogan Highlands alleges that there has been no turnover in the personnel who are responsible with ensuring Defendants' environmental compliance. ECF No. 1 at 26–27.

The Court concludes that Plaintiffs have sufficiently plead continuous or intermittent violations of "effluent standard[s] or limitation[s]" committed by Defendants to state a claim under the Clean Water Act and avoid dismissal. Accordingly, Defendants' Motion to Dismiss for failure to state a claim is denied.

**IV.    The Attorney General has the Authority to Sue**

Defendants argue that the State's claims arising under the Washington Water Pollution Control Act, Chapter 90.49 RCW, also should be dismissed because the Attorney General has no authority to seek declaratory relief on behalf of the State; he may only act as an attorney for the Department of Ecology.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 12

Pursuant to RCW 90.48.037:

> [T]he department with the assistance of the attorney general, is authorized to bring any appropriate action at law or in equity, including action for injunctive relief, <u>in the name of the people of the state of Washington</u> as may be necessary to carry out the provisions of this chapter or chapter 90.56 RCW."

(emphasis added). The Washington Supreme Court recognized that the Attorney General does not have common law or implied powers but, rather, must rely on the statutes to determine the scope of his authority. *City of Seattle v. McKenna*, 259 P.3d 1087, 1090, 1091 (Wash. 2011). However, the *McKenna* court went on to uphold Washington courts' broad interpretation of RCW 43.10.030(1) which "grants the attorney general discretionary authority to act in any court, state or federal, trial or appellate, on 'a matter of public concern,' provided there is a 'cognizable common law or statutory cause of action.'" *Id.* at 1092.

The State is alleging that Defendants' activities and permit violations degrade the environment and the water quality of numerous creeks and rivers within the state, thereby making this a matter of public concern affecting the people of the state of Washington. *See* State Complaint at 2, 9–10 ("These harms adversely affect Washington and its residents by contaminating numerous waters in and around the Buckhorn Mine site."). The fact that Ecology is not named as Plaintiff is neither dispositive of the state law claim, nor unusual. *See, e.g.*, *Washington v. Brouillette*, No. 08-cv-05085-RMP.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 13

To the extent Defendants' motion can be construed to argue that Ecology's involvement in this matter precludes the State's federal citizen-suit under the Clean Water Act, the Court will not consider the issue which has not been appropriately raised or briefed at this time. However, the Court finds that Defendants' instant motion to dismiss the State's claim under Chapter 90.49 RCW fails because the Attorney General is authorized to bring suit for alleged violations of the Washington Water Pollution Control Act on behalf of the people of Washington.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, **ECF No. 18** is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** October 5, 2020.

        *s/ Rosanna Malouf Peterson*
        ROSANNA MALOUF PETERSON
        United States District Judge