FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 17, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OKANOGAN HIGHLANDS ALLIANCE and STATE OF WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>CROWN RESOURCES CORPORATION and KINROSS GOLD, U.S.A., INC.,<br><br>Defendants. | NO: 2:20-CV-147-RMP<br><br>ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Motions for Partial Summary Judgment, ECF Nos. 49, 50, filed by Plaintiffs Okanogan Highlands Alliance and the State of Washington. The Court heard oral argument via video conferencing. Okanogan Highlands Alliance was represented by Paul Kampmeier. Assistant Attorney General Elizabeth Harris appeared on behalf of the State of Washington. Jonathan W. Rauchway presented argument for Defendants Crown Resources Corporation

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 1

1  and Kinross Gold, U.S.A., Inc. The Court has reviewed the motions, the record,
2  heard oral argument and is fully informed.

## BACKGROUND

4  Plaintiffs Okanogan Highlands Alliance ("OHA") and the State of
5  Washington filed this case pursuant to the citizen suit provision of the federal Clean
6  Water Act, 33 U.S.C. § 1365. *See* ECF Nos. 1, 58. Plaintiffs allege that Crown
7  Resources Corporation ("Crown") and codefendant, Kinross Gold, U.S.A, Inc.
8  ("Kinross"), have violated various terms of its National Pollutant Discharge
9  Elimination System ("NPDES") permit, issued by the Washington State Department
10 of Ecology ("Ecology"), for the Buckhorn Mountain Mine in Washington State.
11 ECF Nos. 1 at 16–28, 58 at 11–17.

12 Crown owns the Buckhorn Mountain Mine (the "Mine") in Okanogan
13 County, Washington. ECF No. 1 at 13. Gold production began in 2008 and
14 concluded in 2017 and the Mine is now undergoing reclamation. ECF No. 62 at 3.
15 Industrial stormwater is collected at the Mine and that water is pumped from the
16 Mine's dewatering wells as part of the hydrologic closure of the Mine. *Id.* at 3.

17 On November 1, 2007, Ecology issued to Crown an initial combined
18 "National Pollutant Discharge Elimination System" ("NPDES") and "State Waste
19 Discharge Permit" ("SWD") under state and federal water quality law. *See Crown*
20 *Res., Corp. v. Dep't of Ecology*, 10 Wash. App. 2d 1040, 2019 WL 4942459 at *2
21 (Wash. Ct. App. Oct. 8, 2019). "The permit authorized the discharge of treated

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 2

mine water and stormwater to four outfalls . . . subject to compliance with specified effluent limits." *Id.*

Crown submitted a renewal application in October of 2011, representing under the penalty of law, that the Mine discharges to waters of the United States. ECF Nos. 49 at 11–12, 49-1 at 59–60, 62 at 4.

On February 27, 2014, Ecology issued Crown a combined NPDES and waste discharge permit effective March 1, 2014, through February 28, 2019, which was modified on April 29, 2014, and April 1, 2015 (the "Permit"). ECF Nos. 49 at 12, 49-1 at 74, 62 at 4. The Permit is issued "in compliance with the provisions of The State of Washington Water Pollution Control Law Chapter 90.48 Revised Code of Washington and The Federal Water Pollution Control Act (The Clean Water Act) Title 33 United States Code, Section 1342 et. seq." ECF No. 49-1 at 74.

The Permit has been extended administratively pending issuance of a new NPDES permit in accordance with Ecology's rules. ECF Nos. 49 at 12, 62 at 5. The Permit provides that "[a]ny permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action . . . ." ECF Nos. 50 at 4 (citing ECF No. 49-1 at 132–133), 62 at 11.

Crown appealed the Permit to the Washington Pollution Control Hearings Board ("PCHB"). ECF No. 49 at 13, 62 at 6; *see also Crown Res. Corp., v. Dep't of Ecology*, PCHB No. 14-018, 2015 WL 4719130 at *1 (Wash. Pol. Control Bd.

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 3

1   July 30, 2015).  Ecology conceded certain errors in the Permit that were identified

2   during the PCHB hearing, which Ecology corrected in the second Permit

3   modification on April 1, 2015.  ECF Nos. 49 at 13, 62 at 7.  The PCHB issued a

4   46-page ruling in July 2015 affirming the Permit as modified.  ECF Nos. 49 at 13,

5   62 at 7.

6       Crown appealed, and the Washington State Superior Court for Ferry County

7   affirmed the PCHB's findings of fact and conclusions of law in March 2017.  ECF

8   Nos. 49 at 13, 62 at 7.  On appeal, Division III of the Washington Court of Appeals

9   affirmed the lower court's ruling and the Permit on October 8, 2019.  ECF Nos. 49

10  at 13, 662 at 7; *see also Crown Res., Corp.*, 10 Wash. App. 2d 1040, 2019 WL

11  4942459 (Oct. 8, 2019).

12      In the present suit, Plaintiffs allege that Crown is in violation of numerous

13  conditions of the Permit and such violations constitute violations of an "effluent

14  standard or limitation," as defined by section 505(f) of the Clean Water Act

15  ("CWA"), 33 U.S.C. § 1365, subject to enforcement under the CWA's citizen suit

16  provisions.  ECF Nos. 1 at 28, 58 at 18.

17      In answering Plaintiffs' Complaints, Crown asserted the following

18  defenses:

19      3.    [Plaintiffs'] claims are barred because there has been no
            discharge of a pollutant from a point source to navigable waters as
20          required to establish jurisdiction under the Clean Water Act.

21

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 4

        4.    [Plaintiffs'] claims are barred because there has been no addition of a pollutant as required to establish jurisdiction under the Clean Water Act.

ECF Nos. 39 at 17, 59 at 16 (hereinafter referred to as "defenses 3 and 4"). As summarized by OHA, "[d]efenses 3 and 4 allege that jurisdiction is lacking because Crown has not discharged a pollutant from a point source to navigable waters and because there has not been an addition of a pollutant." ECF No. 49 at 17.

Defendants assert that Plaintiffs "mischaracterize" defenses 3 and 4. ECF No. 61 at 2. Rather, "[d]efenses three and four are aimed only at alleged violations of the [State Waste Discharge] portion of the 2014 Permit, in other words, provisions of the 2014 Permit that were not issued under the federal CWA." ECF No. 61 at 3. The 2014 Permit is "not neatly divided into NPDES provisions and SWD provisions." *Id.* Defendants argue that determining which permit provisions are enforceable under which regulatory program will require resolution of disputed issues of material fact, rendering summary judgment not appropriate at this juncture. *Id.*

OHA and the State move for partial summary judgment on defenses 3 and 4. asserted by Defendants Crown Resources Corporation and Kinross Gold U.S.A., Inc. (collectively, "Crown"). *See* ECF Nos. 49, 50. In addition to finding defenses 3 and 4 not viable in response to Plaintiffs' claims, OHA requests that the Court

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 5

rule as a matter of law that Plaintiffs may enforce all permit conditions at issue in this case. ECF No. 64 at 3.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. Proc. 56(a). Summary judgment is appropriate where the moving party establishes "that there is no genuine issue of dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Parties opposing summary judgment must cite to "particular parts of materials in the record" establishing a genuine dispute or show why the materials cited do not establish either the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). "If the evidence is merely colorable or if not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## DISCUSSION

### I.   Defenses 3 & 4

Defendants assert in defenses 3 and 4 that Plaintiffs' claims are barred because there has been no discharge of a pollutant from a point source to navigable waters nor an addition of a pollutant as required to establish jurisdiction under the Clean Water Act. ECF Nos. 39 at 17, 59 at 16. In other words, Defendants contend

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 6

1  that Plaintiffs' Clean Water Act claims, and this Court's jurisdiction, must be limited

2  to only those provisions of the Permit regulating point source discharges to

3  navigable waters. *See* ECF No. 61 at 6. It is Defendants' position that any provision

4  regulating other kinds of discharges, namely those included in the Permit pursuant to

5  the State Waste Discharge ("SWD") program, are not enforceable under the Clean

6  Water Act. *See id.* at 7 ("[T]he 2014 Permit limits at those monitoring wells are not

7  NPDES permit provisions because they do not regulate the addition of pollutants to

8  navigable waters from a point source.").

9        OHA argues that Crown's defenses 3 and 4 are not viable defenses to

10  Plaintiffs' claims because Plaintiffs need not demonstrate that there has been a

11  discharge or addition of pollutants from a point source to navigable waters to

12  establish either jurisdiction or Defendants' liability under the Clean Water Act. ECF

13  No. 64 at 3. The State contends that to require a citizen suit plaintiff to demonstrate

14  the same would "impose a new and inappropriate burden on Clean Water Act citizen

15  suit plaintiffs." ECF No. 66 at 2.

16        The Clean Water Act explicitly allows private citizens to bring civil suits

17  pursuant to 33 U.S.C. § 1365(a)(1) to enforce "effluent standards or limitations."

18  *See Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992) ("The primary means for

19  enforcing these limitations and standards is the NPDES . . . ."). An "effluent

20  standard or limitation" includes "(7) a permit or condition of a permit issued under

21

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 7

section 1342 of this title that is in effect under this chapter . . . . " 33 U.S.C. § 1365(f)(7).

As stated by Defendants in previously moving for dismissal, "[a]ll parties agree that citizen suit jurisdiction under the federal Clean Water Act . . . requires allegations of ongoing violations of an 'effluent standard or limitation' including 'a permit or condition' thereof." ECF No. 30 at 3; *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 64 (1987) (concluding that provision of Clean Water Act does not confer federal jurisdiction over citizen suits for violations that are "wholly past").

The Court finds no support for Defendants' assertion that jurisdiction under the Clean Water Act is dependent upon a showing of a discharge of a pollutant from a point source to navigable waters or addition of a pollutant. *See Gill v. LDI*, 19 F.Supp.2d 1188, 1195 (W.D. Wash. 1998) (holding that "[Defendant] is wrong when it asserts that the only violations that count are discharge violations" because a "[v]iolation of any condition in an NDPES permit is considered a violation of the CWA.").

One type of Clean Water Act citizen suit, invoking § 1365(f)(1), requires a plaintiff to prove that a defendant, without an NPDES permit, "(1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source." *See Citizens All. for Prop. Rights v. City of Duvall*, No. C12–1093RAJ, 2014 WL 1379575, at *2 (W.D. Wash. Apr. 8, 2014) (quoting *Comm. to Save Mokelumne*

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 8

*River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 307–08 (9th Cir. 1993)); *see also County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1476 (2020) (finding that a NPDES permit is required "when there is a direct discharge from a point source into navigable waters or when there is the functional equivalent of a direct discharge.").

"The second type of CWA citizen suit is one, invoking subsection 1365(f)(7), for violation of an NPDES permit." *Citizens All. for Prop. Rights*, No. C12–1093RAJ, 2014 WL 1379575, at *2; *see also* ECF No. 1 at 12. In bringing this second type of CWA citizen suit, "citizen groups may enforce even valid permit conditions that regulate discharges outside the scope of the Clean Water Act, namely discharges that may never reach navigable waters." *Nw. Env't Advocs. v. City of Portland*, 56 F.3d 979, 988–89 (9th Cir. 1995); *see also Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 359 (5th Cir. 2012) (noting that the "unmistakably clear language" of § 1356(f)(6)[1], allowing for citizen suits for violations of "a permit or condition thereof," never mentions "discharges.").

---

[1] *See* 35 U.S.C. § 1365(f)(6) (effective to December 3, 2018) ("[T]he term 'effluent standard or limitation under this chapter' means 'a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter'. . . ."). The "permit or condition of a permit" subpart became § 1365(f)(7) subsequent to the addition of current subpart (5). Thus, case law referring to the "permit or condition of a permit" subpart as § 1365(f)(6) is fully applicable.

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 9

There is no dispute that Defendants hold an effective NPDES Permit issued pursuant to 33 U.S.C. § 1342, and there is binding authority recognizing that citizens may bring Clean Water Act suits to enforce an NPDES permit condition, including planning, monitoring, and reporting requirements, as well as state standards that are incorporated into an NPDES permit. ECF No. 49-1 at 66; *See Gill*, 19 F.Supp.2d at 1195 (citing *Nw. Env't Advocs. v. City of Portland*, 56 F.3d at 988–89). Thus, Plaintiffs do not need to demonstrate that there has been a discharge or addition of pollutants from a point source to navigable waters to establish this Court's jurisdiction or to establish Defendants' potential liability for a Clean Water Act suit.

Accordingly, Defendants' defenses 3 & 4 are not viable defenses to Plaintiffs' claims as a matter of law.

## II. Plaintiffs can Enforce All Permit Conditions at Issue

The parties disagree as to whether a citizen suit under the Clean Water Act seeking to enforce an "effluent standard or limitation," including a NPDES permit or condition[s] of a NPDES permit, may encompass those conditions imposed pursuant to state law program, such as SWD, which are included in a combined permit.

**Clean Water Act & NPDES Permit**

"The Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: 'to restore and maintain the chemical, physical and biological integrity of the Nation's waters.'" *Arkansas v. Oklahoma*, 503 U.S. at 101 (quoting 33 U.S.C. § 1251(a)). To that end, the Clean

Water Act establishes the NPDES permit system for regulating discharges of pollutants into waters of the United States. *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002) (citation omitted).

"A cornerstone of the Clean Water Act is that the 'discharge of any pollutant' from a 'point source' into navigable waters of the United States is unlawful unless the discharge is made according to the terms of an NPDES permit obtained from either the United States Environmental Protection Agency ("EPA") or from an authorized state agency." *Id.* (quoting 33 U.S.C. §§ 1311(a), 1342).

In Washington State, the Department of Ecology ("Ecology") is authorized by the EPA to administer the Clean Water Act's NPDES program. *Assn' to Protect Hammersley*, 299 F.3d at 1009–1010. Washington's NPDES permit program is set forth at WAC 173-220. Consistent with the CWA, NPDES permits are required for the discharge of pollutants from a point source to any surface water of the state. WAC 173-220-020.

**State Waste Discharge (SWD) Permit Program**

Washington State's Waste Discharge Permit Program is "applicable to the discharge of waste materials from industrial, commercial, and municipal operations into ground and surface waters of the state and into municipal sewerage systems." WAC 173-216-010. The regulation does not apply to "point source discharge[s] of pollutants into navigable waters of the state which are regulated by the National

1  Pollutant Discharge Elimination System (NPDES) Permit Program, chapter 173-220

2  WAC." *Id.* Nonetheless, "[f]or a given facility, permit requirements under this

3  chapter and NPDES permit requirements under Water Pollution Control Act, RCW

4  90.48.260, shall under normal circumstances, be contained in a single permit

5  document." WAC 173-216-140.

6  **Combined Permit**

7      Ecology regulates water quality under both state and federal law primarily

8  through the use of combined NPDES and state waste discharge permits, such as

9  those at issue in this case. *Crown Res., Corp.*, 10 Wash. App. 2d. 1040, 2019 WL

10  4942459, at *2 n. 2.

11      Here, there is no dispute that Crown's NPDES Waste Discharge Permit No.

12  WA0052434 is a "combined permit," meaning it was issued "[i]n compliance with

13  the provisions of The State of Washington Water Pollution Control Law, Chapter

14  90.48 Revised Code of Washington and The Federal Water Pollution Control Act

15  (The Clean Water Act) Title 33 United States Code, Section 1251 et seq." ECF

16  No. 49-1 at 74. Furthermore, there is no dispute that the Permit is "not neatly

17  divided into NPDES provisions and SWD provisions." ECF No. 61 at 3.

18      For the reasons outlined below, the Court finds that Plaintiffs may seek to

19  enforce all Permit conditions under the citizen suit provision of the Clean Water

20  Act consistent with (1) case law in the Ninth Circuit and (2) the plain language of

21  the Permit.

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL
SUMMARY JUDGMENT~ 12

Defendants contend that to the extent Plaintiffs' claim relies on a Permit provision that does not regulate the addition of pollutants to navigable waters from a point source, those claims cannot support a citizen suit provision under the CWA. ECF No. 61 at 8 (citing 40 C.F.R. § 123.1(i)(2)) ("If an approved State program has greater scope of coverage than required by Federal law the additional coverage is not part of the Federally approved program."); *see also Oregon Nat. Res. Council v. United States Forest Serv.*, 834 F.2d 842, 849–50 (1987) (finding that the plaintiffs did not have a cause of action under citizen suit provision to enforce state water quality standards, as affected by nonpoint sources); *holding limited by Nw. Env't Advocs. v. City of Portland*, 56 F.3d 979, 989 n. 11 (9th Cir. 1995) ("When this Court and other courts have held that citizens may not enforce water quality standards under § 505(a)(1), they addressed standards that were not included in a NPDES permit.") (citing *Oregon Nat. Res. Council*, 834 F.2d 842).

"The Ninth Circuit rule, however, is that state standards, including narrative as opposed to numerical criteria, incorporated into an NPDES permit may be enforced through a citizens' suit." *Gill*, 19 F. Supp. 2d at 1195 (citing *Nw. Env't Advocs. v. City of Portland*, 56 F.3d 979). In *Northwest Environmental Advocates v. City of Portland*, the plaintiffs brought suit on the basis of an Oregon NPDES permit condition which provided that "no wastes shall be discharged and no activities shall be conducted which will violate Water Quality Standards as adopted in OAR 340–41–445 . . . ." 56 F.3d at 985. The Ninth Circuit rejected the district court's holding

that it lacked jurisdiction for the citizen enforcement of water quality violations, because "[t]he plain language of CWA § 505 authorizes citizens to enforce *all* permit conditions." *Id.* at 986 (emphasis in original).

"The Supreme Court has acknowledged citizen standing under CWA § 505(a)(1) and (f)(6), to enforce permit conditions based on both EPA-promulgated effluent limitations and state-established standards." *Nw. Env't Advocs.*, 56 F.3d at 988 (citing *E.P.A. v. California*, 426 U.S. 200, 224–25 (1976)). As noted above, "citizen groups may enforce even valid permit conditions that regulate discharges outside the scope of the Clean Water Act, namely discharges that may never reach navigable waters." *Nw. Env't Advocs.*, 56 F.3d at 988–89 (citation omitted).

This reasoning has further been applied by the Ninth Circuit to a combined permit. *See Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002). In *Community Association for Restoration of the Environment v. Henry Bosma Dairy*, the combined permit at issue "contain[ed] NPDES requirements and requirements from RCW 90.64, Washington's Dairy Nutrient Management Act." *Id.* The Ninth Circuit held that the Clean Water Act citizen suit plaintiff had "standing to enforce violations of the [Dairy Waste Management Plan] and NPDES permits." *Id.*

Here, Defendants hold a NPDES permit, and SWD requirements are incorporated as conditions of the Permit. *See Nw. Env't Advocs.*, 56 F.3d at 986 ("Portland holds a National Pollutant Discharge Elimination Systems (NPDES)

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 14

permit, and the water quality standards are conditions of its permit."). Consistent with Ninth Circuit precedent holding that the "citizen suit provision of CWA specifically incorporates . . . state permit programs," the Court finds that Plaintiffs may seek to enforce all permit conditions in the case. *Ashoff v. City of Ukiah*, 130 F.3d 409, 413 (9th Cir. 1997) (citing 26 U.S.C. § 1365(f)(6)).

Furthermore, the text of the Permit is clear, and provides that "[a]ny permit noncompliance constitutes a violation of the Clear Water Act and is grounds for enforcement action." ECF No. 49-1 at 132–133.

"[NPDES permit] terms are to be given their ordinary meaning, and when the terms of a [permit] are clear, the intent of the parties must be ascertained from the [permit] itself." *Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1205 (9th Cir. 2013) (citing *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). Permittees are to be judged by the standards of the permits under which their discharges are authorized. 33 U.S.C. § 1342(k). "A permittee violates the CWA when it discharges pollutants in excess of the levels specified in the permit, or where the permittee otherwise violates the permit's terms." *Nat. Res. Def. Council, Inc.*, 725 F.3d at 1204 (citations omitted); *see also* 40 C.F.R. § 122.41(a) ("Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for [an] enforcement action"). In other words, the permit is the measuring stick against which a permittee's compliance status is to be determined.

ORDER GRANTING PLAINTIFFS' FIRST MOTIONS FOR PARTIAL SUMMARY JUDGMENT~ 15

There is no dispute that the Permit includes the following provision entitled "Duty to Comply":

> The Permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action; for permit termination; revocation and reissuance; or modification; or denial of a permit renewal application.

ECF No. 49-1 at 132–133. The Court agrees with Plaintiffs that the "Duty to Comply" provision is unequivocal, and must be given its ordinary meaning. ECF No. 50 at 7; *see also Nat. Res. Def. Council, Inc.*, 725 F.3d at 1205.

Thus, the Court finds that Plaintiffs may seek to enforce all permit conditions at issue in this case based upon Ninth Circuit precedent and the plain language of the Permit.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff Okanogan Highlands Alliance's First Motion for Partial Summary Judgment, **ECF No. 49**, and Plaintiff State of Washington's First Motion for Partial Summary Judgment, **ECF No. 50**, are **GRANTED**.

2. Defendants' **defenses 3 & 4**, asserted at ECF Nos. 39 at 17, 40 at 17, 59 at 16, and 60 at 16–17, are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** June 17, 2021.

                          *s/ Rosanna Malouf Peterson*
                          ROSANNA MALOUF PETERSON
                          United States District Judge